UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WILFRED GUY, SR.                                    CIVIL ACTION

VERSUS                                              NO. 13-5730

BESSIE CARTER ET AL.                               SECTION "I" (2)

**REPORT AND RECOMMENDATION**

Plaintiff, Wilfred Guy, Sr., is a prisoner currently incarcerated in the Rayburn Correctional Center in Angie, Louisiana.  He originally filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against defendants Rayburn Correctional Center Director of Nursing Bessie Carter and Warden Robert C. Tanner, alleging that another inmate's medical bills were attributed to him and money was erroneously deducted from his inmate account.  He further alleges that he has been denied proper medical care for a hernia.  He subsequently amended his complaint to name RN Steffi Scritchfield as an additional defendant in this case.  He seeks medical care, transfer to another prison facility and monetary compensation.

On October 29, 2013, I conducted a telephone conference in this matter. Participating via telephone were plaintiff pro se; Assistant Louisiana Attorneys General Michael Keller and Phyllis Glazer, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

**THE RECORD**

Guy testified that he is currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center ("Rayburn") based upon a conviction for attempted murder on March 3, 1999, for which he is serving a sentence of 20 years in prison. He confirmed that he makes two kinds of claims in this case: (1) He was improperly charged for a medical test that was performed not for him but for another inmate. (2) He has not received adequate medical care while incarcerated in Rayburn.

As to the improper medical bill claim, Guy testified that he first became aware that he had been wrongfully charged for a July 24, 2012, medical test given to another inmate when he reviewed the monthly statement concerning his Rayburn inmate trust account on or about August 2, 2012.  He confirmed that he had received and reviewed the medical records that I previously ordered defendants to produce, Record Doc. Nos. 6 and 14, but said they "are not really accurate," in that the subject documentation concerning the wrongful charge is confusing.

Specifically, Guy referred to a one-page document in the medical records entitled "Infectious Disease Testing" dated July 23, 2012.  The document shows Guy's name and DOC identification number hand-written in a space for the "Inmate's Name and DOC #"at the top, but with another inmate's name, Cedric Cenales – marked with an asterisk, beneath it, accompanied by the notation "charge to this offender" next to the asterisk.

The form lists the total charge for a blood test for syphilis as $87.60 and appears to bear the signature of Cenales. Guy testified that the signature is neither Guy's nor Cenales's, but "they charged me with $43.80 [half of the total] . . . and how could you charge me . . . and not give me notice that you were going to charge me for . . . infectious disease [testing]." Guy also testified that he never received a copy of this document, and he never signed it. He complained that the $43.80 was taken from his inmate account "twice, not just once," without notice to him.

Guy explained that "I was supposed to receive" this infectious disease testing. He conceded that his blood was in fact drawn for the testing, although he did not know or remember whether it was drawn on July 23rd, as reflected in the document, or on any other date, except that he knew it was during 2012. Guy confirmed the notation in another one-page document entitled "Rayburn Correctional Center Health Care Information" that also is included in his medical records just before the document described above that he had in fact been in a fight with inmate Cedric Cenales shortly before the blood-testing. Guy stated that money was also drawn from Cenales's account, but he was not sure if the blood-testing was done as a result of the fight. He admitted that he went to the infirmary after the fight and had his blood drawn "more than one time," and was told that it was to check his liver. He said that he did not have syphilis, AIDS or hepatitis.

Guy summarized that his complaint is that he was wrongfully charged the $87.60 for this infectious disease testing because he had not been notified of the charge and because Cenales also said that he had been charged for the same testing.

As to his medical care claim, Guy complained that he had been diagnosed by Dr. McVea at the jail for a "hernia situation" on January 30, 2013, but he was told that the jail at that time had no contract with any hospital where he could be taken for hernia treatment. He testified that jail personnel "lost their agreement with LSU University and LSU Bogalusa, and they do not have a hospital to bring me to." He said he has hernias on both his right and left sides, causing him pain. He also alleged that he "had to stop using "this doctor's eye drop" because his right eye has begun to hurt. Guy testified that he had watched a CNN television program entitled "Monsters Crawling Within You" on September 30, 2013 in the jail, and "these things I told them are crawling in my back and I learned . . . that's bacteria, infectious disease . . . that's been turned into you." Guy said he told doctors at the jail about the things crawling inside his body, and a doctor examined him, but there is no hospital where he can be sent. Guy confirmed the notation in his medical records indicating that he had been given a topical ointment for this condition at the jail, but he said he has gotten no relief for the crawling internal feeling. He testified that he has been seen only once by a doctor at the jail about this condition.

Guy estimated that he has been seen by a doctor or nurse or EMT at the jail about 10 times for his hernia problem.  He complained that "they write it down, but they never call me on doctor call."  He testified that he knows other inmates who have been brought to hospitals for their medical conditions, but he has been told there is no hospital under contract where he could be taken.  He complained that some things are missing from his medical records; for example, that Dr. McVea had given him "ten pills."  He stated that he had been seen by Dr. McVea at the jail three times in 2013, twice for his hernia condition and once for the "crawling" feeling in his body.  He said that once in early 2013 he was scheduled by Dr. McVea to speak via closed-circuit television with a doctor at the LSU Hospital to discuss his hernia and scheduling his surgery, but the doctor "all of a sudden had a change in attitude" about the surgery and delayed any surgery recommendation to "a later date."

He testified that he suffers pain from his hernia conditions "all the way to my heart . . . . There's so much pain in me . . . like a hole is being broken in my heart."  Guy also said that "in my back where these things [are] crawling, . . . it's gotten to a situation like they're come together and they're trying to bite through my backbone, my shoulder bone, and that hurts. . . ."  He said he receives Ibuprofen for the pain when he requests it on "pill call" from deputies perhaps every three or four days.  He said he received

ointment for the crawling feeling for only about a month, and that he has no rash of any kind that is visible on his skin.

Guy's verified medical records indicate that he has received frequent medical attention for various complaints at Rayburn since 2009. As to the conditions he principally complains about in this case, the medical records reflect that in response to his complaint on January 7, 2013, about an egg-sized knot in his pubic area, Guy was seen by a doctor at Rayburn on January 30, 2013. The Rayburn physician diagnosed a right indirect inguinal hernia, provided him with a "hernia belt," and referred him to offsite "general surgery" evaluation at the LSU hospital. When Guy was not sent to the hospital soon thereafter, he again submitted a written complaint and request for medical attention and was seen at Rayburn on March 25, 2013, by an emergency medical technician, who suggested increased fluid intake, instructed Guy to wear his hernia belt and provided him with Motrin for pain relief.

The medical records indicate that the "telemed" conference with an offsite specialist about which Guy testified occurred on May 20, 2013. At that time, the records reflect that he was given a brief physical exam by Rayburn personnel and then "seen by general surgery clinic" via tele-conference. His hernia condition was confirmed and the written summary of that day's activities includes the notation, "schedule surgery once approved."

About two weeks later, on June 3, 2013, Guy was seen by a Rayburn nurse in response to his complaint of "something crawling" under the skin of his left back. The nurse observed no rash or other skin irritation and no complaints of pain from the hernia, although she noted that Guy wanted his hernia surgery done.  On July 17, 2013, he was examined by a doctor at Rayburn in response to further complaints of an "insect crawling under [the] skin on [his] back." The doctor diagnosed a rash and athlete's foot and prescribed a topical cream and a new "small/medium hernia belt ASAP," which Guy acknowledged receiving in writing on July 31, 2013.  He was seen again by a doctor at Rayburn on August 14, 2013, in response to more complaints that "something is crawling in his skin." The examiner wrote in his report on that day, "No infestations or rashes noted. . . . Check status of hernia surgery."

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

7

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the

facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable Section 1983 claim of violation of constitutional rights, even under the broadest reading.[1]

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.    SECTION 1983 CLAIM:  LOSS/DEPRIVATION OF PROPERTY

Guy alleges that another inmate's medical bill was attributed to him and money was erroneously deducted from his inmate account to pay that bill.  Construed broadly, these allegations may constitute a complaint that Guy was deprived of his property in violation of his due process rights.  However, plaintiff fails to state a cognizable Section 1983 claim in this regard, and his claim must be dismissed for two reasons.

First, the courts have held that prison officials may impose the reasonable costs of medical care upon prisoners who have the ability to pay without violating constitutional strictures.  Myers v. Klevenhagen, 97 F.3d 91, 95 (5th Cir. 1996) (no due process violation when prison officials debited inmate's prison account to pay for medical services provided in prison, even when the action violated the prison's own policies, procedures or regulations); Stewart v. Herrington, No. 5:06cv177-MTP, 2008 WL 3822597, at *3-4 (S.D. Miss. Aug. 12, 2008) (inmate's allegation that prison nurse charged him twice, although he saw the doctor only once, resulting in an overcharge, dismissed).

In this case, Guy admitted that his blood was drawn and lab tests were performed after he became involved in a fight with another inmate, obviously as a prudent and precautionary measure to insure that Guy had not become infected with a communicable disease as a result of the fight.  Guy clearly had sufficient funds in his inmate trust

account to pay the bill, which was incurred – not as a result of happenstance or misfortune – but because of Guy's own actions in fighting with another inmate.  Under these circumstances, no violation of Guy's constitutional rights occurred merely by virtue of the charge.

Second, any alleged mistake that occurred in billing Guy instead of the other inmate for the lab tests or in deducting the full amount for the lab tests instead of only half did not violate Guy's constitutional rights. In deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest–life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process." Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984); accord Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988); Cuellar v. Tex. Employment Comm'n, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has consistently ruled that a prisoner's property and due process rights are circumscribed by his custodial status.  In general, the Supreme Court has ruled that a state actor's random and unauthorized deprivation of a prisoner's property, whether negligent or intentional, does not result in a violation of due process rights if the State provides an adequate post-deprivation remedy.  Alexander v. Ieyoub,

62 F.3d 709, 712 (5th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); accord Wilson v. Holt, 158 F. App'x 546, 546 (5th Cir. 2005).

More specifically, in Parratt, a state prisoner, like Guy, sued prison officials under Section 1983 alleging that their negligent loss of a hobby kit he had ordered from a mail order catalog deprived him of property without due process of law.  The United States Court of Appeals for the Eighth Circuit affirmed the district court's summary judgment in the prisoner's favor, but the Supreme Court reversed, finding that no due process violation occurs when a state employee negligently deprives a prisoner of property, provided that the State makes available a meaningful post-deprivation remedy.  Parratt, 451 U.S. at 543-44, cited in Hudson, 468 U.S. at 532.

In Hudson, a state prisoner filed suit under Section 1983, alleging that the correctional officer defendants had "conducted a 'shakedown' search of [the prisoner's] locker and cell for contraband," and had "intentionally destroyed certain of his noncontraband personal property during the . . . search."  Hudson, 468 U.S. at 519-20. The Court specifically approved the conduct by prison officials of "wholly random searches" or "routine shakedowns of prison cells" as "essential" to the effective security and administration of prisons.  Id. at 529.  Finding that the State had provided an

adequate post-deprivation remedy for the alleged destruction of plaintiff's property, the Court found no violation of his rights actionable under Section 1983. "We hold that the Fourth Amendment has no applicability to a prison cell. We hold also that, even if [the officers] intentionally destroyed [the prisoner's] property during the challenged shakedown search, the destruction did not violate that Fourteenth Amendment since the [State] has provided [the prisoner] an adequate post-deprivation remedy." Id. at 536.

The Fifth Circuit has clearly recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. Hutchinson v. Prudhomme, 79 F. App'x 54, 55 (5th Cir. 2003); Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Thus, the deprivation of property alleged by Guy in this case: i.e., the alleged wrongful deduction of $87.60 from his inmate account to pay for the lab tests of someone else, whether negligent or intentional, is precisely the kind of prisoner's claim as to which the Fifth Circuit has consistently affirmed dismissals by applying the Parratt/Hudson doctrine. See, e.g., Hutchinson, 79 F. App'x at 54 (affirming dismissal of prisoner's claim "that prison personnel mishandled and embezzled funds deposited in his inmate account" because Louisiana law provides an adequate post-deprivation remedy); Marshall, 741 F.2d at 764 (Louisiana law provided adequate post-deprivation remedy when inmate's "personal property was scattered about and some items were

14

missing" from his cell); see also Odom v. St. Tammany Parish S.O., No. 09-0109, 2009 WL 1147925, at *3 (E.D. La. Apr. 28, 2009) (McNamara, J.) (state law provided adequate remedy for allegations that deputies took inmate's mail, pictures, addresses for witnesses for his criminal case and copies of motions).  Such dismissals are mandated, even when the plaintiff has alleged that the property deprivation violates some prison regulation or policy.  See Myers, 97 F.3d at 95 (no due process violation when prison officials debited inmate's prison account to pay for medical services provided in prison, even when the action violated the prison's own policies, procedures or regulations); Murphy v. Collins, 26 F.3d 541 (5th Cir. 1994) (Inmate's Section 1983 claim that his dictionary (later destroyed as contraband), cup and bowl were confiscated without regard to prison policy was properly dismissed when adequate state post-deprivation remedies were available.); Stewart, 2008 WL 3822597, at *3-4 (S.D. Miss. Aug. 12, 2008), adhered to on reconsideration, 2008 WL 3884394 (S.D. Miss. Aug. 14, 2008) (Inmate's allegation that prison nurse charged him twice, although he saw the doctor only once, resulting in an overcharge, was dismissed because state law provided an adequate post-deprivation remedy.).

Plaintiff's state law remedy for the alleged negligent or intentional deprivation of $87.60 from his inmate account lies in a conversion or other tort suit for damages in state court.  Because no constitutional violation has been alleged, his complaint in this court

fails to state a claim for which relief may be granted pursuant to Section 1983 and/or is legally frivolous and must be dismissed.  Guy remains free to pursue his claim concerning his lost $87.60 in state court against any officials allegedly responsible for his lost property.

(B)     MEDICAL CARE

Guy testified that he was a convicted prisoner at all times during which defendants allegedly failed to provide him with adequate medical care for his hernia and the "crawling" sensation in his back. In Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976).  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825,  847 (1994).

16

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."  Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997).  The deliberate indifference standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (additional citations omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton, 122 F.3d at 291.

In this case, Guy's allegations negate any inference that defendants acted with deliberate indifference to a serious medical need.  Certainly, his skin rash is not serious. Once detected and treated with topical cream, the medical records reflect that subsequent examination of his back after continuing complaints revealed nothing. In this regard, Guy's complaints about "Monsters Crawling Within" based upon his viewing of a television program border on delusional.

In addition, a hernia does not automatically present a serious medical need for purposes of constitutional analysis.  Facts developed in other cases have established that

> there are three types of hernia situations:  (1) a hernia that is strangulated, which is a medical emergency mandating surgery; (2) a hernia that is reducible yet so painful or debilitating that surgery is required; and (3) a hernia that is reducible and, given the dangers and risks inherent in any operation, can be treated through non-surgical means.

Johnson v. Doughty, 433 F.3d 1001, 1014 (7th Cir. 2006); see also Williams v. First Corr. Med., 377 F. Supp. 2d 473, 476 (D. Del. 2005) (plaintiff failed to show serious medical need when defendant physician attested that "plaintiff's hernia is 'very small,' 'reducible' and that plaintiff has not shown any signs of complications").

18

The current record indicates that Guy's hernia, while perhaps most conclusively addressed by surgery at some point, presents no immediate medical emergency and is not so debilitating that immediate surgery is required.  At this point in time, at least, it cannot be concluded that Guy's hernia presents a serious medical need for purposes of constitutional analysis.

Even assuming, however, without concluding, that Guy's hernia was serious, Guy's testimony and the verified medical records establish that jail personnel were <u>not</u> deliberately indifferent to either his hernia or his back rash in the constitutional sense. Guy has alleged facts, confirmed by his testimony and his medical records, that negate any inference of deliberate indifference by jail officials.

Guy was seen by nurses and doctors concerning his hernia and back rash on numerous occasions. He was provided with physical examinations, hernia belts, consultation with a surgery specialist, topical cream and pain medication.  The records indicate that he will be referred for surgery offsite when it is approved.

Under these circumstances, it cannot be inferred that jail personnel were deliberately indifferent in any way to plaintiff's conditions. While it is clear from his allegations and testimony that Guy is not satisfied with the speed or nature of his medical care, and that delay has occurred in his referral to offsite surgery, no finding of deliberate indifference can be made based on this record.

> [T]he decision whether to provide additional treatment is a classic example of a matter for <u>medical judgment</u>. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, <u>intentionally</u> treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. In Guy's case, the decisions made by the treating medical providers to render the care that they gave, rather than more specialized care, including surgery, are classic examples of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation. <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. <u>Wilson</u>, 501 U.S. at 298. No such showing can be made in this case in light of the continuing medical attention Guy has received for his hernia and back rash during his incarceration.

Contentions like Guy's that amount to a disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.

"[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted); see id. (active treatment of prisoner's serious medical condition that ultimately resulted in death does not constitute deliberate indifference, even if treatment was negligently administered); see Rowe v. Norris, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); see also Estelle, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . .") (emphasis added); Corte v. Schaffer, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994)) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with

broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip."); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

In McBarron v. Federal Bureau of Prisons, 332 Fed. Appx 961, 2009 WL 1659221 (5th Cir. 2009), a federal prisoner complained, as Guy does in this case, that he had not been provided with surgery for an inguinal hernia that had been recommended by a doctor. Applying the same constitutional standards applicable under Section 1983, including its Stewart decision cited above, the Fifth Circuit affirmed the district court's dismissal of the prisoner's medical care claim. The court ruled that a mere "difference of opinion as to the course of treatment or need for surgery does not constitute deliberate indifference." Id. at 964, *1. "McBarron may not have received all the treatment that he desired as quickly as he wanted, but . . . he was not ignored, . . . he was given pain medication, and . . . surgery was approved once it became medically necessary. No showing of deliberate indifference is made." Id. (citing Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (deliberate indifference requires an inmate to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard of any serious medical needs")).

22

Plaintiff's complaint in this case about his medical care for his back rash and hernia condition fails to state a claim of violation of his constitutional rights sufficient to obtain relief under Section 1983 because he cannot establish either serious medical need or deliberate indifference under the applicable constitutional standard.  This medical care claim must therefore be dismissed.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____4th_____ day of February, 2014.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

_____

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.